IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY CRABB, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
| -vs- | )   Case No. CIV-21-0303-F |
| | ) |
| CSAA GENERAL INSURANCE | ) |
| COMPANY; CSAA INSURANCE | ) |
| EXCHANGE; and CSAA | ) |
| INSURANCE GROUP; | ) |
| | ) |
|   Defendants. | ) |

## **ORDER**

Before the court is plaintiff's motion to stay this litigation while jurisdictional discovery is conducted. Doc. no. 13. Defendants have responded, objecting to a stay. Doc. no. 19. Plaintiff filed a reply brief. Doc. no. 21. Also before the court is plaintiff's motion to remand. Doc. no. 14. Defendants responded, objecting to remand. Doc. no. 18. Plaintiff filed a reply brief. Doc. no. 20. For the reasons set out in this order, both the motion to stay and the motion to remand will be denied.

Three other motions (doc. nos. 10, 11 and 12), as to which briefing is not complete, are addressed at the end of this order.

### Background

This is an insurance bad faith action. The petition (hereafter, complaint) alleges breach of the implied covenant of good faith and fair dealing, and breach of the insurance policy, based on defendants' refusal to pay the proper amount owed under the policy for damage to plaintiff's property. Doc. no. 1-1, ¶ 45.

Plaintiff is Jay Crabb, the alleged insured under the homeowner's policy in question. The notice of removal alleges Crabb is a citizen of Oklahoma. Doc. no. 1, ¶ 2. The complaint alleges that Crabb is a resident of Oklahoma. Doc. no. 1-1, ¶ 1. Of course, residence is not the same thing as citizenship.[1] That said, plaintiff does not dispute that he is a citizen of Oklahoma, and the court finds that fact established.

Defendants are:

-- CSAA General Insurance Company (CSAA General), which the notice of removal identifies as a corporation incorporated under the laws of the State of Indiana with its principal place of business in California. Doc. no. 1, ¶ 3. CSAA General is the insurer on the homeowner's policy in question.[2] None of these facts are in dispute, and the court finds them established.

-- CSAA Insurance Exchange (the Exchange), which the notice of removal identifies as a reciprocal insurer formed under the laws of the State of California. *Id*. at ¶ 4. Plaintiff argues the Exchange is an unincorporated association which is considered a citizen of "every state in which it has a member," which plaintiff contends includes Oklahoma. Doc. no. 14, p. 1. (The court notes it is not the states that members/subscribers are *in*, but the states in which members/subscribers are

---

[1] Residence alone is not the equivalent of citizenship. State Farm Mut. Auto. Ins. Co. v. Dyer, 19 F.3d 514, 520 (10th Cir. 1994); Walden v. Broce Construction Co., 357 F.2d 242, 245 (10th Cir. 1966). It is domicile, not residence, which is relevant for determining an individual's citizenship. Siloam Springs Hotel, L.L.C. v. Century Surety Co., 781 F.3d 1233, 1238 (10th Cir. 2015). For any number of reasons, an individual can reside in one place but be domiciled in another place; for adults, domicile is established by physical presence in a place, coupled with an intent to remain there. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989).

[2] *See*, declarations pages (doc. no. 1-4) and policy (doc. no. 14-1, p. 3 of 92) identifying policy as "AAA Insurance underwritten by CSAA General Insurance Company."

*citizens*,[3] that determines the citizenship of an unincorporated association.) Defendants do not dispute that the Exchange is an unincorporated association whose citizenship is determined by the citizenship of its members/subscribers.[4]  Rather, defendants present evidence intended to show the Exchange has no members/subscribers who are citizens of Oklahoma.  *Id*.[5]  As a result, defendants contend the Exchange is not a citizen of Oklahoma and that its presence in this action does not defeat diversity.  Defendants also contend the Exchange is fraudulently joined and should be dismissed regardless of its citizenship.

   -- CSAA Insurance Group (CIG), which the notice of removal states is not a legal entity.  Defendants state that "CSAA Insurance Group" references a group of insurance companies, including CSAA General.  Doc. no. 1, ¶7.  In addition to contending that CIG is not a legal entity and therefore has no citizenship, defendants contend CIG has been fraudulently joined.  Plaintiff argues that whether CIG is an unincorporated association, other unincorporated entity or a non-entity, CIG should be deemed a citizen of Oklahoma. Doc. no. 14, p. 3, n. 4.

---

[3] Siloam Springs, 781 F.3d at 1235-36 (every circuit to consider the issue has determined that the citizenship of an LLC, as an unincorporated association, is determined by reference "to the citizenship of each and every one of its members").

[4] *See*, doc. no. 19, p. 2 (defendants argue "the only issue [with respect to the Exchange's citizenship] is whether there is an Exchange member/subscriber that is a citizen of Oklahoma").

[5] Defendants submit the affidavit of Katherine Evans, which states:  "CSAA Insurance Exchange does not issue policies in Oklahoma and does not have subscribers or members that are citizens of the State of Oklahoma."  Doc. no. 1-11, p. 2 of 4, ¶ 3.  This is a conclusory statement which offers no hint as to how Evans could have reached such a determination given that citizenship is not determined by residency or location.

CSAA General and the Exchange removed,[6] alleging that plaintiff fraudulently joined[7] the Exchange and CIG to destroy diversity jurisdiction.[8] The notice of removal cites orders from the United States District Court for the Northern District of Oklahoma which conclude the Exchange was a stranger to the insurance policies in question in those actions and was fraudulently joined. Doc. no. 1, second-numbered ¶ 6.[9]

## Discussion

Plaintiff's motions turn on two questions: 1) are the Exchange and CIG fraudulently joined? and if not, 2) is either of these defendants a citizen of Oklahoma, thereby defeating diversity jurisdiction and requiring remand?

In Marilyn Strome v. CSAA Insurance Exchange et al., 2020 WL 930493 (N.D. Okla. Feb. 26, 2020), Judge Claire V. Eagan set out the standards relevant to fraudulent joinder.

---

[6] The notice of removal states that the non-removing defendant, CIG, is not a legal entity and thus has no capacity in which to remove and no citizenship. Id., p. 1, n.1.

[7] "Fraudulent joinder" is a bit of a misnomer. See, Mayes v. Rapoport, 198 F.3d 457, 461, n.8 (4th Cir. 1999). In this case, the issue is whether the claims against the Exchange and CIG are hopelessly lacking in merit, a condition which can, and often does, exist in the absence of a fraudulent pleading.

[8] Diversity is the only alleged basis of federal subject matter jurisdiction. A federal question is not presented.

[9] The notice of removal cites: Marilyn Strome v. CSAA Insurance Exchange et al., 19-CV-573-CVE-FHM, 2020 WL 930493 (N.D. Okla. Feb. 26, 2020) (denying motion to remand and dismissing the Exchange); DeSmet v. CSAA Insurance Exchange and CSAA General Insurance Company, 19-CV-624-CVE-JFJ, 2019 WL 7284769 (N.D. Okla. Dec. 27, 2019) (denying motion to remand and dismissing the Exchange); and Sandhar v. CSAA General Insurance Company, 19-CV-306-JED-FHM, 2020 WL 4334797 (N.D. Okla. July 28, 2020) (denying motion to remand and dismissing the Exchange and Automobile Club of Oklahoma). In addition, the notice of removal cites Mark Strome v. CSAA Insurance Exchange, 19-CV-574-JFH-CDL, doc. no. 31 (N.D. Okla. Nov. 16, 2020) (granting the Exchange's motion for judgment on the pleadings because there was no cognizable claim for breach of the implied duty of good faith and fair dealing against the Exchange, which was not a party to the insurance contract).

>    The Supreme Court has recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Defendants can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. Slover v. Equitable Variable Life Ins. Co., 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006). If defendants can show that the non-diverse defendant, the Exchange,[10] was fraudulently joined, the parties will be completely diverse and the Court may exercise subject matter jurisdiction over this case. See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp., 931 F.2d 1411, 1412 (10th Cir. 1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder."). To prove that a party has been fraudulently joined, the defendant has the burden to "demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court." Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir. 2000). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument. Smoot v. Chicago, Rock Island & Pac. R.R. Co., 378 F. 2d 879, 881-82 (10th Cir. 1967); Dodd v. Fawcett Publications, Inc., 329 F.2d 82, 85 (10th Cir. 1964). "The burden of persuasion placed upon those who cry 'fraudulent joinder' is indeed a heavy one." Hart, 199 F.3d at 246 (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). Although the Court can pierce the pleadings, "[t]his does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." Smoot, 378 F.2d at 882.

Strome at *2.

---

[10] "The Exchange" referred to by Judge Eagan is CSAA Insurance Exchange, the same exchange that is a defendant in this action.

5

Defendants' fraudulent joinder argument is that because the Exchange and CIG are strangers to the insurance contract, plaintiff has no possibility of recovering against them.

In general, the implied duty of an insurer to deal fairly and act in good faith regarding its insured is a duty which is not extended to non-insurers such as the Exchange and CIG. As stated in Hensley v. State Farm Fire and Casualty Co., 398 P.3d 11 (Okla. 2017), "an action based on the duty to deal fairly and act in good faith will not lie against a stranger to the contract." Id. at 18. Hensley sets out an exception which permits the duty of good faith and fair dealing to apply when a third-party stranger to the insurance contract "acts so like an insurer that the third party develops a special relationship with the insured, and that third party possesses power, motive, and opportunity to act unscrupulously." Id. at 18, citing Trinity Baptist Church v. Brotherhood Mut. Ins. Services, LLC, 341 P.3d 75, 81, and other cases, at n.16. Plaintiff, however, does not rely on that type of an exception to assert liability against the Exchange or CIG.[11]

What plaintiff *does* rely on to argue there is a possibility of recovering against the Exchange and CIG is Oliver v. Farmers Insurance Group of Companies, 941 P.2d 985 (Okla. 1997). Oliver (a bad faith insurance case which held the trial court had improperly granted summary judgment to certain insurance entities) is cited in the complaint for the proposition that defendants "are collectively liable." Doc. no. 1-1, ¶ 38. In addition, plaintiff's briefs repeatedly press Oliver as the basis for plaintiff's view that this action comes within an exception to the general rule which otherwise holds that bad faith claims do not lie against a stranger to the insurance contract.

---

[11] The complaint says nothing about plaintiff having a special relationship with the Exchange or CIG, and plaintiff makes no arguments along those lines.

6

Oliver states that "If one corporation is simply the instrumentality of another corporation, the separation between the two may be disregarded and [they may be] treated as one for the purpose of tort law." *Id*. at 987. "The question hinges primarily on control." *Id*. Oliver reviews ten factors which may be considered to determine whether the separation between two corporate entities may be disregarded. *Id*.[12] Thus, Oliver, although it does not use phrases such as "alter ego" or "piercing the corporate veil," sets out the requirements under Oklahoma law for disregarding corporate structures and treating two entities as one.

As previously stated, the complaint attempts to bring claims against the Exchange and CIG by meeting the requirements of Oliver for disregarding corporate structures.[13] Setting aside questions about what Oliver does or does not hold, or how Oliver may or may not be distinguished, the initial problem with plaintiff's reliance on Oliver is that Oliver applies Oklahoma law to determine whether the corporate veil should be pierced.[14] Oliver does so without any discussion of which state's law should determine that question, which is understandable because nothing in Oliver indicates the choice of law issue was raised.

Unlike Oliver, the choice of law issue has been raised by defendants in this case. Defendants argue plaintiff attempts to invoke an alter ego type theory like the

---

[12] Oliver held the trial court erred when it granted summary judgment to Farmers Group, Inc. on the ground that it was a stranger to the insurance contract. Conflicting evidence regarding the status of that entity's relationship to the insurer, Farmers Insurance Company, Inc., meant there were fact questions to be resolved by the jury. *Id*. at 987-88.

[13] Not only does the complaint cite Oliver, it alleges that CSAA General (the insurer) is an "instrumentality" of the Exchange and of CIG (doc. no. 1-1, ¶¶ 3-4) and that there was "a regime of control" among the defendants. *Id*. at ¶ 29 (defendants "operate as a reciprocal insurance exchange wherein they pool and partner their assets, liabilities (for claims) and business under a regime of control which renders them and all of their instrumentalities, subsidiaries and affiliates subject to liability under the claims asserted by Plaintiff herein.")

[14] In Oliver, the policy in question was written with Farmers Insurance Company, Inc., a Kansas corporation. 941 P.2d 985, 987.

7

theory recognized in Oliver without first addressing choice of law issues, which defendants contend must be addressed. Doc. no. 18, p. 3, n. 2. Having raised this issue, defendants then cite Canal Insurance Co. v. Montello, Inc., 822 F. Supp. 2d 1177, 1184 (N.D. Okla. 2011), a case in which plaintiff sought to hold Hartford Financial Services Group, Inc. liable for the acts of Twin City Fire Insurance Company (a subsidiary of Hartford).[15]

Canal is instructive. It lays out the analysis used by Judge James H. Payne to conclude there is a conflict between the law of Indiana (the state in which Twin City Fire Insurance Company, the insurer in that case, was incorporated) and the law of Oklahoma (the forum state), with respect to the requirements for piercing the corporate veil.[16] Canal concludes that Oklahoma law permits the corporate veil to be pierced if the corporations' separate existence "is a design or scheme to perpetuate a fraud *or* if one corporation is merely an instrumentality or agent of the other;" Indiana law, on the other hand, requires a party seeking to pierce the corporate veil to prove the corporate form was merely an instrument of another *and* that the misuse of the corporate form would constitute a fraud or promote injustice. *Id*. at 1181-84.[17] Thus, "There is a clear distinction between Oklahoma and Indiana law regarding the piercing of the corporate veil." *Id*. at 1183. Having found that the laws of Oklahoma and Indiana conflict, Canal determines that the choice of law rules of Oklahoma, as the forum state, would apply, and that the Oklahoma Supreme Court would hold the law of the state of incorporation should be applied to determine whether to pierce a

---

[15] Plaintiff does not respond to defendants' choice of law arguments.

[16] The issue was before Judge Payne on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.

[17] Indiana cases continue to recognize these requirements. *See*, *e.g.*, Reed v. Reid, 980 N.E. 2d 277, 301 (Ind. 2012) (corporate veil may be pierced by showing "the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice," quoting Aronson v. Price, 644 N.E. 2d 864, 867 (Ind. 1994)).

corporation's veil. *Id*. at 1183-84.[18]  Accordingly, Judge Payne applied Indiana law on this issue. *Id*.[19]

The undersigned agrees with the reasoning of Canal.  As the choice of law issue has been raised, the undersigned looks to the choice of law rules of Oklahoma, as the forum state, to determine which state's law applies.  Oklahoma would apply the law of the state in which the corporation in question is incorporated (here, as in Canal, Indiana) to determine whether the corporate structure of CSAA General should be disregarded.  The law of Indiana and Oklahoma differ with respect to the requirements for piercing the corporate veil.  Thus, it is Indiana law, not Oklahoma law as set forth in Oliver, which determines whether CSAA General's corporate structure may be disregarded to impose liability on the Exchange or CIG.

Applying Indiana law, the court finds plaintiff has no possibility of success against the Exchange or CIG because the complaint alleges no facts to satisfy the second prong of the Indiana test.  As pointed out in Canal, that prong requires a fraud or the promotion of an injustice before the court may disregard the corporate structure of the insuring entity (CSAA General).  The complaint alleges nothing like

---

[18] *See also*, Board of County Commissioners of the County of Kay, Oklahoma v. Freeport-McMoran Copper & Gold, Inc., 2013 WL 12093009, *3 (W.D. Okla. Sept. 5, 2013) (law of New York, as the state of incorporation of BZC, applied to issue of whether plaintiff could pierce BZC's corporate veil); Clemmer v. District of Columbia Group, Inc., 2014 WL 1509274, *4 (W.D. Okla. Apr. 16, 2014) (applying law of D. C., as the place of TCG's incorporation, to determine whether to pierce TCG's corporate veil); Tomlinson v. Combined Underwriters Life Ins. Co., 2010 WL 1486919, *1 (N.D. Okla. Apr. 13, 2010) (Citizens and CICA were incorporated in Colorado; National was incorporated in Texas; these states' law applied to determine whether to pierce corporate veil).

[19] Judge Payne concluded, among other things, that the complaint was sufficient to state a claim under the "promotes injustice" prong of the Indiana test for piercing the corporate veil. Canal, 822 F. Supp. 2d 1177, 1186.  Hartford's motion to dismiss Montello's claim for alter ego liability was therefore denied. *Id*. at 1187.

what was alleged in Canal in that regard.[20]  There is no allegation that CSAA General was a mere conduit of the Exchange or of CIG, or that CSAA General was set up to shield those entities from liability or for any other unjust purpose. Nothing in the complaint (or in plaintiff's briefing) indicates a fraud will be committed or that an injustice will be promoted unless CSAA General's corporate structure is pierced to permit liability on the part of the Exchange or CIG.[21]

To summarize, even if the court were to hold that Oliver offers a possibility of success against the Exchange and CIG (a ruling the court does not make), it is Indiana law, not Oklahoma law, which determines whether CSAA General's corporate structure may be disregarded.  Measuring the allegations under Indiana law, there is no possibility that plaintiff will succeed in piercing the corporate structure of CSAA General to hold the Exchange or CIG liable.  Defendants have carried their burden to show the Exchange and CIG are fraudulently joined.

Because this is the court's conclusion as a matter of law, there is no need to defer a ruling on the fraudulent joinder issue to permit plaintiff to conduct discovery on that issue.  Nor is there any need for discovery on the citizenship issue, which is the focus of plaintiff's motion for a stay to conduct jurisdictional discovery.  Plaintiff's motion for a stay will therefore be denied.

---

[20] The Canal complaint alleged that Hartford used Twin City as a mere conduit to shield itself from liability based upon Twin City's activities;  that an injustice would occur if the corporate separateness were not disregarded;  and that the court should not permit Hartford to shield itself from contract liability.

[21] Nor can plaintiff argue that if he were permitted discovery he could then amend to meet Indiana's requirements for ignoring CSAA General's corporate structure.  See, In re Rezulin Products Liability Litigation, 133 F. Supp. 2d 272, 284-85 (S.D.N.Y. 2001) ("Although a defendant 'bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that [plaintiffs] might allege in the future:  Only [the] present allegations count," collecting authorities in footnotes).

Conclusion

CSAA Insurance Exchange and CSAA Insurance Group are **DISMISSED** from this action as fraudulently joined.

Plaintiff's motion for a stay to permit jurisdictional discovery is **DENIED**. Doc. no. 13.

With the Exchange and CIG dismissed, there is no dispute that diversity requirements are met with respect to plaintiff and the remaining defendant, CSAA General Insurance Company. Plaintiff's motion for remand is **DENIED**. Doc. no. 14.

The Exchange's motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., is **STRICKEN** as moot. Doc. no. 12.

The only other motions which remain pending are CSAA General Insurance Company's motion for judgment on the pleadings (doc. no. 10) and its motion for dismissal of this action for failure to join a necessary party (doc. no. 11). The stay on briefing which was put in place by doc. no. 15 is lifted. Response briefs are **DUE** to the motions at doc. nos. 10 and 11 within twenty-one days of the date of this order. Any reply brief movant wishes to file is **DUE** seven days after the filing of the relevant response brief.

IT IS SO ORDERED this 22nd day of July, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0303p003.docx

11