## IN THE UNTIED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAY CRABB,<br><br>                              Plaintiff,<br><br>v.<br><br>CSAA GENERAL INSURANCE<br>COMPANY; CSAA INSURANCE<br>EXCHANGE and CSAA INSURANCE<br>GROUP,<br><br>                              Defendants. | Case No: 5:21-cv-303 F |

## PLAINTIFF'S RESPONSE TO DEFENDANT, CSAA GENERAL INSURANCE COMPANY'S, MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to the grounds and controlling authorities discussed herein, Plaintiff, Jay Crabb, respectfully requests an Order denying Defendant, CSAA General Insurance Company's, Motion for Judgment on the Pleadings [Doc. 10]. Defendant's attempt to evade responsibility for its bad faith denial of Mr. Crabb's claim is premature and contrary to the evidence implicated by its Motion.

## <u>INTRODUCTION</u>

The basic facts underlying this case are straightforward, but there is no merit to Defendant's allegations that Mr. Crabb suffered no loss covered by the insurance policy in effect when his home and boat dock were damaged by hail.  Mr. Crabb's home and dock were insured against losses that occurred before the sale of his property was completed. This type of policy is known as an occurrence policy.

While his policy was in full force and effect, Mr. Crabb agreed to sell the property to a third-party. Mr. Crabb retained the risk of any damage to his property until the sale closed and possession was transferred to the buyer. Defendant does not dispute this fact and the sales contract provision quoted on page 7 of its Motion confirms it as well. In reality, nothing about the sales contract, to which Defendant was never a party, impacts the nature or extent of coverage that existed when hail damaged the home and dock long before the transaction between Mr. Crabb and the buyer closed. As with any loss suffered by a policyholder, their loss occurs at the time it happens. There is no relevance to any sale of the property at any point after the loss takes place. Nothing in the policy Defendant issued to Mr. Crabb says otherwise and Defendant's failure to cite a single provision from the policy on this issue reveals the lack of any merit to its position. Thus, its denial of Mr. Crabb's claim without any supporting policy provision or investigation of his loss (admitted on p. 4 of Defendant's Motion) proves its breach of his policy and violation of Oklahoma's duty of good faith and fair dealing.[1]

On March 27, 2020, before the sale closed, a storm damaged Mr. Crabb's property. Plaintiff submitted a claim for such hail damage within weeks of it being discovered. Under the terms of his policy, Plaintiff was entitled to benefits for any damage sustained by his home in accordance with his insurable interest "at the time of loss." Ex. 1, Policy at p. 44 (Section I(A)(1)). That provision states:

---

[1] Defendant's allegation that Mr. Crabb is only alleging bad faith is inconsistent with the express language in his Petition which is quoted on page 3 of Defendant's Motion. Mr. Crabb specifically alleged Defendant "breached the implied covenant of good faith and fair dealing and breached the insurance contract …." *Id*.

### A.  Insurable Interest and Limit of Liability

> Even if more than one person has an insurable interest
> in the property covered, we will not be liable in any
> one loss:
>
> 1.  To any "insured" for more than the amount of
>     such "insured's" interest ***at the time of loss***; or
>
> 2.  For more than the applicable limit of
>     liability.

*Id*. (Emphasis added). This clear and unambiguous language resolved any issue about Mr. Crabb's right to benefits for this loss, but Defendant deliberately misapplied it.

Although the loss occurred while the policy was in full force and effect, Defendant refused to perform its contractual and legal duties to inspect, evaluate and pay for the loss. Its excuse for refusing to do so was the wholly irrelevant assertion of him no longer having an insurable interest due to the sale.[2] No other grounds were asserted and no exclusions were raised before this litigation. *Id*. Defendant's position is unsupportable and contrary to the policy provision at issue.

It is undeniable that Mr. Crabb had an insurable interest in the property when it suffered damage from hail prior to his sale of the property. *See* 36 O.S. 3605(B). Yet, Defendant intentionally disregarded such interest and did nothing to investigate his loss before denying his claim. Under such circumstances, Defendant's Motion should be denied.

---

[2] The denial letter stated: "Coverage for the loss has been declined given you no longer have an insurable interest in the property and it no longer qualifies as a residence premises." Ex. 2, Denial Letter.

## ARGUMENTS AND AUTHORITIES

### I. STANDARDS APPLICABLE TO MOTIONS FOR JUDGMENT ON THE PLEADINGS

Motions for judgment on the pleadings under Fed.R.Civ.P. 12(c) are governed by the same standard of review applicable to motions to dismiss under Fed.R.Civ.P. 12(b)(6). *Nelson v. State Farm Mut. Auto Ins. Co*., 419 F.3d 1117, 1119 (10th Cir.2005). In that regard, under Fed. R. Civ. P. 8(a)(2) a party asserting a claim must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Heightened fact pleading of specifics is not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics"). Consequently, when reviewing motions for judgment on the pleadings, trial courts must "accept all the well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the non-moving party." *Id.* (internal quotation marks and citation omitted); *Ramirez v. Dept. of Corr., State of Colo.*, 222 F.3d 1238, 1241 (10th Cir.2000). The inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir.2007) (internal quotation marks and citation omitted). "[T]the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.* "'[P]lausibility' in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 127 S.Ct. at

1974).  The purpose of *Twombly's* "plausibility" requirement is to "weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, [and] also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. "[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context … [and] the type of case." *Id.* For example, "[a] simple negligence action may require significantly less allegations to state a claim under Rule 8 than a case alleging anti-trust violations (as in *Twombly*) or constitutional violations (as in *Robbins*)." *Cutter v. Metro Fugitive Squad*, 2008 WL 4068188, p. * 3 (W.D. Okla. 2008). "Even after *Twombly*, the [Complaint's] factual allegations need only contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Christianson v. Park City Mun. Corp.*, 554 F.3d 1271, 1276 (10th Cir. 2009) (citing *Twombly*, 127 S.Ct. at 1974).

The issue in reviewing the sufficiency of plaintiffs' claims is not whether they will prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer  v. Rhodes*, 416 U.S. at 232, 236, 94 S.Ct. 1683 (U.S. Ohio 1974).  "Judgment on the pleadings should not be granted 'unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Park Univ. Enters., Inc. v. American Cas. Co. of Reading, PA,* 442 F.3d 1239, 1244, (C.A. 10 Kan. 2006) (quoting *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir.2000)). Because Defendant has not clearly established no material issue of fact remains to be resolved, it has not demonstrated entitlement to judgment as a matter of law.  Moreover, the undisputable material facts discussed above (pp. 1-3) are more

than sufficient to support Mr. Crabb's allegations at the pre-discovery stage of this case. Thus, Defendant's Motion should be denied.

## II.   SUFFICIENCY OF THE PLEADINGS

In ¶ 40 of his Petition (Doc. No. 1-1), Mr. Crabb pled he was insured under a homeowner's policy issued by Defendants (No. 109055392).  In ¶ 41, he pled that on or about March 27, 2020, his property was damaged by a cause of loss insured under his policy. In ¶¶ 42-44, Mr. Crabb pled that he promptly submitted a claim for his loss to Defendants, that he made the premises available for inspection by the defendants, and that he cooperated with the defendants and otherwise complied with all conditions precedent to recover under the policy. In ¶ 45, Mr. Crabb pled that Defendants were required by the terms and conditions of the policy to pay his claims, but they failed and refused to pay the proper amount owed under the policy for covered damage to Mr. Crabb's property. Mr. Crabb further claimed that Defendants breached the implied covenant of good faith and fair dealing *and* breached the insurance contract, as a matter of standard business practice, in numerous respects specifically set forth therein.[3]  In ¶ 46, Mr. Crabb further pled that as a direct result of the Defendants' wrongful acts and omissions, he suffered loss of policy benefits owed under his policy, emotional distress and other damages. In short, Mr. Crabb pled breach of contract, bad faith and damage allegations that preclude any judgment for Defendant – especially at this point.

---

[3] Defendant's admission that it never investigated Mr. Crabb's loss and the lack of any policy provision supporting its denial of his claim easily coincide with several of the specific assertions quoted on page 4 of Defendant's Motion.

### III.    MR. CRABB HAD AN INSURABLE INTEREST IN THE SUBJECT PROPERTY AT THE TIME IT SUSTAINED A COVERED LOSS, RENDERING DEFENDANT LIABLE FOR BREACHING HIS POLICY/CONTRACT

Oklahoma follows the "factual expectation" theory of insurable interest. *Snethen v. Oklahoma State Union of Farmers Educ. & Co-op. Union of Am.*, 1983 OK 17, 664 P.2d 377, 380; *Delk v. Markel Am. Ins. Co.*, 2003 OK 88, ¶ 11, 81 P.3d 629, 636.  Under this theory there is an insurable interest in property if the insured would gain *some economic advantage* by its continued existence or would suffer *some economic detriment* in case of its loss or destruction. *Snethen*, 664 P.2d at 380 (emphasis added). This is also the theory espoused by 36 O.S.§ 3605(B), which defines insurable interest as: "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." *See Delk*, 81 P.3d at 636–37.[4]

Once the relationship between the insured and the property is found to be lawful and to create a substantial economic interest, the underlying criteria which make up an insurable interest are met. Here, Mr. Crabb was the record owner of the property and there is no evidence that his interest was other than lawful, i.e., there is no evidence that it was acquired in violation of the law or prohibited by law. No one held a title to the property that was superior to Mr. Crabb's interest. Since he had an insurable interest in the property at the time of the covered loss to his insured property, Defendant had both a contractual

---

[4] The word "lawful" as used in § 3605(B) is not synonymous with the word "legal" and does not require the application of the legal interest theory, but is merely used in the sense that the interest was not acquired in violation of the law. *Snethen, 664 P.2d at 381.*

and tort-based duty to perform its obligations under the policy. Its refusal to do so breached both the contract and duty of good faith and fair dealing.

Oklahoma appellate courts have previously addressed situations that are similar. For example, in *Carr v. Union Mut. Ins. Co.*, 1979 OK CIV APP 15, 598 P.2d 269 (approved for publication by the Oklahoma Supreme Court), the plaintiffs owned a house in Idabel, Oklahoma. They purchased a homeowner's policy from the defendant under which their home and the unscheduled personal property therein were insured. Ultimately, the plaintiff's home was foreclosed upon and sold at a foreclosure sale. However, before the foreclosure sale was confirmed, while the plaintiffs were still residing in the home, a fire occurred. The fire destroyed all of the plaintiffs' unscheduled personal property in the home and damaged the dwelling.

The plaintiffs filed an action against, Union, the insurer, for loss of their personal property. Union filed an answer alleging that since the policy was a homeowner's policy, the insured must own the real estate and dwelling in order to insure personal property. Thus, the defense in the trial court and on appeal was the plaintiffs did not have insurance on their personal property after their home was sold at foreclosure sale. The trial court ruled for the plaintiffs on their claim and that order was affirmed on appeal. As the appellate court noted:

> In the present case the redemption period, or at least the possibility of redemption, had not expired because the foreclosure sale had not been confirmed at the time of the fire. Therefore ***the Carrs still had an insurable interest in both the dwelling and their unscheduled personal property. Since the policy remained in effect at the time of the loss and the Carrs had an insurable interest which was insured, they were entitled to recover as a matter of law***. We therefore hold that the trial court did not commit error in overruling Union's

motion for summary judgment, nor in overruling Union's demurrer to the evidence [emphasis added].

In *Phoenix Fed. Sav. & Loan v. Great Sw. Fire Ins. Co.*, 1979 OK CIV APP 49, 603 P.2d 356 (approved for publication by the Oklahoma Supreme Court), a companion case to *Carr*, *supra*, Phoenix Federal held the mortgage to Carr's home in Idabel. Carr's homeowner's insurance policy was issued by defendant Union Mutual and contained a loss payable clause in favor of the mortgagee. The Carrs defaulted and Phoenix Federal initiated a foreclosure action. A foreclosure sale was held and Phoenix Federal was the high bidder. A motion to confirm the sale was filed the same day.

Phoenix Federal, in its capacity as buyer, purchased a second insurance policy from Great Southwest Fire Insurance Company (Great Southwest). Subsequently, the house was damaged by fire while the Carrs were still living there, before the sale was confirmed.

Phoenix Federal brought suit against both insurance companies. The trial court in an amended journal entry granted judgment against the insurance companies for both the fire loss and attorney fees. The court also granted a pro rata judgment against the noncontributing insurance company if one of them should pay the full amount. Great Southwest paid the entire judgment and Union Mutual, the mortgagor's carrier, appealed.

Union Mutual claimed that all contractual obligations to Phoenix Federal terminated when Phoenix Federal's interest as mortgagee merged with its ownership interest acquired as buyer of the property at the foreclosure sale.  It also argued that under the "relation-back doctrine" the rights of the parties involved in a foreclosure sale are fixed as of the date of sale and relate back to that date.

9

The Court of Appeals cited its ruling in favor of the Carrs in the companion case as dispositive of Union Mutual's arguments, stating that "[*b]ecause the Carrs had an insured interest remaining at the time of the fire, the mortgagee also retained its interest*." 603 P.2d at 358 (emphasis added). With respect to Union Mutual's relation-back claim, the Court stated "[t]he fact that a sale is confirmed will not retroactively eliminate the insurable interest which existed during the period of time between the sale and confirmation of the sale." *Id*. The Court therefore affirmed the trial court's ruling as a matter of law that an insurable interest existed which was covered by insurance. *Id*. at 358-59.

Oklahoma is not alone in determining that that the insured is entitled to recover if the insured had an insurable interest and had insurance in place at the time of the loss, regardless of subsequent events that might occur. As noted in Banks McDowell, *Insurable Interest in Property Revisited*, 17 Cap. U.L. Rev. 165, 168–69 (1988):

> The vast majority of states have adopted a rule, often referred to as the 'New York' rule, that the insured is entitled to recover on his insurance policy because he had an insurable interest in the property and his loss should be measured at the time of the fire or other covered occurrence. The leading case to which this rule is traced is *Foley v. Manufacturers' and Builders' Fire Ins. Co. of New York* [152 N.Y. 131, 135, 46 N.E. 318, 319 (1897)]. The insureds owned land on which contractors were obligated to build houses, the subject of the insurance. Before completion, the buildings were destroyed by fire. As required by their contract, the contractors rebuilt. The Court of Appeals reasoned that since the loss fell within the exact terms of the policy, the only issue was whether the insureds had an insurable interest. Since the insureds owned the buildings which were being annexed to their land, they clearly had an insurable interest at the time of the loss and thus were entitled to recover on the policy.[5]

---

[5] *Accord, Wolf v. Home Ins. Corp.*, 100 N.J. Super. 27, 241 A.2d 28, 38 (1968), *aff'd, Wolf v. Home Ins. Co.*, 103 N.J. Super. 357, 247 A.2d 345 (App. Div. 1968) (noting that "plaintiffs held full legal title to the insured premises on the date of the fire" and stating that "the 'time of loss' can only intend the time of fire damage or destruction. If any other meaning were inferred, then the time for valuing the loss would be uncertain in every case.

Oklahoma's general rules regarding the interpretation of insurance policies are well settled. The proper construction of the insurance contract is a question of law. *Max True Plastering Co. v. U.S.F. & G. Co.,* 1996 OK 28, 912 P.2d 861, 869. The insured has the burden of showing that their claim is covered under the policy. *See U.S. Fid. and Guar. Co. v. Briscoe,* 1951 OK 356, 239 P.2d 754, 756 (1952) ("contractor must bring himself within the terms of the policy, before he can establish insurer's liability thereon"). Once the insured establishes coverage, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." *Pitman,* 217 F.3d at 1298. "[M]ere ambiguity cannot, as a matter of law, create a valid defense to a bad faith claim." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 800 (10th Cir. 1995). Construing ambiguous policy provisions against the insured and in favor of the insurer "would not be in good faith and could not be countenanced." *Id.*

In the present case, the subject policy covered insured losses incurred by Mr. Crabb when: 1) the policy was in force and effect; and 2) Mr. Crabb had an insurable interest in

---

Defendant insurer offers this court no fixed standard for determining when a casualty loss is to be measured and argues only that Here, after taking cognizance of collateral events not involving the insurer which came to be realized nearly five months after the fire, there was no loss. Nothing in New Jersey law commits this court to such a view …"); *Milwaukee Mechanics Ins. Co. v. Maples*, 37 Ala. App. 74, 66 So. 2d 159 (Ala. Ct. App. 1953); *Tublitz v. Glens Falls Ins. Co.*, 179 N.J. Super. 275, 277–79, 431 A.2d 201 (Law. Div. 1981) (although buildings were scheduled for demolition at the time one of them was destroyed by fire, insurer was nonetheless obligated to indemnify the plaintiff for the loss because "it is reasonable to infer from all the surrounding circumstances that ***plaintiff expected his fire insurance coverage to be in force until demolition was actually begun***." The Court found that the Plaintiff's insurable interest was not destroyed by the existence of an executory contract for demolition of a building and that the plaintiff was entitled to partial summary judgment on his claim.) (emphasis added).

the property. Both of those conditions were satisfied and Defendant has pointed to nothing in Mr. Crabb's policy that indicates differently. In fact, Defendant's breach of contract is clearly demonstrated by its statement on page 7 of its own Motion [Doc. 10] that "CSAA General understood that ***it would be required to cover damages that arose after the sale but prior to closing (as the risk of loss was on Plaintiff)***" (emphasis added). The sale closing weeks after the loss occurred does not change the outcome one iota. The only thing that remains is determining the quantum of Mr. Crabb's damages.[6] The insurance policy Defendant issued to Mr. Crabb promised to indemnify him for covered damage sustained during the policy period.  Covered damage occurred during the policy period, yet Defendant denied his claim for reasons not contemplated in the policy. Defendant's own statements show that they breached their contract and their Motion should be denied.

## IV.    A QUESTION OF FACT EXISTS ON WHETHER DEFENDANT'S CONDUCT WAS REASONABLE

Under Oklahoma law, it is axiomatic that an insurer has an "implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received." *Newport v. USAA,* 2000 OK 59, 11 P.3d 190, 195 (citing *Christian v. American Home Assurance Co.,* 1977 OK 141, 577 P.2d 899, 901).  The essence of a bad faith action "is the insurer's unreasonable bad-faith conduct, including the unjustified withholding of payment due under the policy." *Id.*, 11 P.3d at 195 (citation omitted). It is Defendant's responsibility to **properly** investigate the insured's claim. *Brown v. Patel*, 2007 OK 16,

---

[6] Because Mr. Crabb suffered a loss of policy benefits owed under his policy, Defendant's claim that he suffered no bad faith damages should similarly be rejected.

157 P.3d 117, 122 (noting that "a duty to *timely* and *properly* investigate an insurance claim is intrinsic to an insurer's duty to *timely* pay a valid claim") (emphasis in original). When presented with a claim by its insured, an insurer "must conduct an investigation reasonably appropriate under the circumstances" and "the claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." *Newport v. USAA,* 2000 OK 59, 11 P.3d 190, 195 (citing *Buzzard v. Farmers Ins. Co* ["*Buzzard II"*], 1991 OK 127, 824 P.2d 1105). "The decisive question is whether the insurer had a 'good faith belief, **at the time its performance was requested**, that it had a justifiable reason for withholding payment under the policy." *Buzzard II,* 824 P.2d at 1109 (citing *Buzzard I*) (emphasis added). "The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." *Buzzard I,* 736 P.2d at 159.  It is also axiomatic that an insurer's duty to pay claims immediately "recognizes that a substantial part of the right purchased by an insured is the right to receive the policy benefits promptly. Unwarranted delay precipitates the precise economic hardship the insured sought to avoid by purchase of the policy." *Christian v. American Home Assurance Co.,* 1977 OK 141, 577 P.2d 899, 903.  As noted in *McCorkle v. Great Atl. Ins. Co.*, 1981 OK 128, 637 P.2d 583:

> [T]he essence of the intentional tort of bad faith with regard to the insurance industry is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and **if there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case**.  [637 P.2d at 587] [emphasis added].

In this case, as Defendant itself freely admits, there was no investigation of Mr. Crabb's loss.[7] Nor was its unilateral "determination" that Mr. Crabb suffered "no loss" legally supportable under Oklahoma law.[8] Similarly unreasonable was Defendant's sham allegations that Mr. Crabb lacked an insurable interest when this loss occurred. *Delk v. Markel Am. Ins. Co.*, 2003 OK 88, ¶ 11, 81 P.3d 629, 636. Such acts and omissions are the essence of a bad faith claim, and a jury can easily decide doing absolutely nothing to honor a valid claim is unreasonable.

## V.    DEFENDANT'S BASELESS "METAL ROOF" EXCLUSION ARGUMENT

Defendant's last plea for judgment on the pleadings rests on the "plainly applicable exclusion for metal roofs." Defendant's Motion at p. 9. However, there is nothing "plainly applicable" about the purported exclusion at this point in the litigation. Nor has Defendant offered any proof or evidence all the damage to Mr. Crabb's property was merely "cosmetic", probably because, in breach of its duties, no investigation was conducted into the nature or extent of any damage. *See* Defendant's Motion at p. 4 ("… there was no investigation per se: CSAA General simply received the claim, requesting [sic] Plaintiff's

---

[7] *See* Defendant's Motion at p. 4, stating: "for instance, <u>there was no investigation per se</u>: CSAA General simply received the claim, requesting Plaintiff's contract of sale and determined that there was no coverage" (emphasis added).

[8] To determine whether an inference of bad faith is permissible, Defendant's actions must be evaluated to judge (1) the reasonableness of the insurer's actions in light of the law applicable to the claim at the time of denial, and (2) the facts Midland knew or should have known at the time (or times) that Willis requested the company to perform its contractual obligations. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994) (citing *Timmons v. Royal Globe Ins. Co.,* 1982 OK 97, 653 P.2d 907, 914). Defendant is held to knowledge of the applicable Oklahoma law, and the reasonableness of their decision must be judged in light of that law. *Id.*

contract of sale and determined that there was no coverage.") (emphasis added).  Yet, "[a] motion for judgment on the pleadings 'should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (quoting *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006)); *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006) (*quoting U.S. v. Any & All Radio Station Trans. Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)).

Mr. Crabb's Petition pled that his property suffered a loss that Defendant wrongly refused to cover. Nothing in his Petition says anything about a "metal roof." Nor did Defendant deny this claim on the basis that an exclusion for "Cosmetic Damage to Metal Roof Covering Caused by Hail" somehow applied. Ex. 2, Denial Letter. Indeed, as shown by the claim file (Doc. 9-4), Mr. Crabb's claim was for damage to his roof and boat dock.

Defendant has not "clearly established that no material issue of fact remains to be resolved and [it] is entitled to judgment as a matter of law." *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d at 1244. Likewise, it has not established the purported "metal roof" exclusion applies to this loss through any evidence. Nor, due to its admitted failure to investigate this loss at all, can it establish any damage is merely cosmetic.

## **CONCLUSION**

Pursuant to the foregoing grounds and authorities, Mr. Crabb respectfully submits that Defendant's Motion should be denied in its entirety.

**MANSELL ENGEL & COLE**

s/ Keith F. Givens
Steven S. Mansell, OBA #10584
Kenneth G. Cole, OBA #11792
Keith F. Givens, OBA#16501
204 North Robinson Avenue, 21st Floor
Oklahoma City, OK 73102-7201
T: (405) 232-4100 ** F: (405) 232-4140
kgivens@meclaw.net

**ATTORNEYS FOR PLAINTIFF**


<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 12, 2021, I filed the attached document with the Clerk of Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.


s/ Keith F. Givens